793 F.2d 1291
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MARVALENE GILLESPIE, Plaintiff-Appellant,
vs.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 84-4011
 United States Court of Appeals, Sixth Circuit.
 5/2/86
 
 AFFIRMED
 S.D.Ohio
 On Appeal from the United States District Court for the Southern District of Ohio
 Before: MARTIN and GUY, Circuit Judges, and REED, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Gillespie appeals from the denial of her application for social security disability benefits. Plaintiff claimed disability commencing August 21, 1980, as a result of back strain and a nervous condition. This claim was denied initially and on reconsideration. After a hearing at which she was represented by counsel, her claim was denied by an administrative law judge (ALJ) on June 23, 1982. The appeals council permitted the ALJ's decision to stand as the final decision of the Secretary. Pursuant to 42 U.S.C. Sec. 405(g), the plaintiff appealed to the district court which referred the matter to a magistrate. On April 27, 1984, the magistrate issued a report recommending that plaintiff's motion for summary judgment be denied and the Secretary's cross-motion for summary judgment be granted. Plaintiff filed timely objections to the magistrate's report and, on October 23, 1984, the district court, after a de novo review, adopted the magistrate's report in its entirety and granted summary judgment in favor of the Secretary.
 
 
 2
 Upon review, we find, as did the court below, that there is substantial evidence to support the Secretary's decision, and we affirm.
 
 
 3
 On appeal, Gillespie raises two issues: (1) whether there has been a willful failure to follow a prescribed treatment within the meaning of 20 C.F.R. Sec. 404.1530;[1] and (2) whether there was substantial evidence to support the ALJ's conclusion that the claimant could perform her past relevant work.[2]
 
 
 4
 We find it necessary to consider only the second issue raised for two reasons. First, the issue of willful failure to follow a prescribed treatment was raised only by the district judge and was not considered by the ALJ or the magistrate. It is clear from a reading of the district court opinion that the judge adopted the report and recommendation of the magistrate in its entirety and that the court's reference to 20 C.F.R. Sec. 404.1530 was only a make-weight to the decision.
 
 
 5
 Second, since we find substantial evidence to support the ALJ's decision, which decision did not consider the issue of willful failure to follow a prescribed course of treatment, there is no necessity for us to consider the issue.
 
 
 6
 At the time of the hearing before the ALJ in 1982, the claimant was 35 years old, single, and had two children ages 15 and 16. She was a high school graduate, and had taken ten or twelve college courses hoping to obtain a two-year associates degree in accounting. Prior to stopping work due to a back injury in August of 1980, claimant had worked as a linen clerk in a hospital, and as a clerk and a cashier in a drug store for a number of years during which time she also did some supervisory work.
 
 
 7
 In August of 1980, she slipped and fell while at work in the hospital, and this apparently was the start of her lower back problems.[3] She has treated with a number of doctors, both for her shoulder and back problems and for emotional problems.
 
 
 8
 The evidence before the ALJ consisted of (1) his observations of the claimant at the hearing, and (2) a number of doctors' reports. Much of the medical evidence presented was originally generated in connection with claimant's pursuit of her state workers' compensation claims.
 
 The Hearing Evidence:
 
 9
 At the hearing, claimant was examined by both her own attorney and the ALJ. The picture that emerged was that of a single 35 year old woman living in a rented home with two teenage children. She described a 1979 workplace injury of her shoulder and a 1980 slip-and-fall back injury which occurred on her last day of work. Her principal source of income is workers' compensation payments resulting from her injuries. Her daytime activities are minimal, and she is somewhat restricted by the fact that she takes care of her daughter's baby during the day while the daughter is at school.
 
 
 10
 Although she regularly treats for her shoulder and back problems, her doctors feel there is little further they can do to help since there are no clinical indications of treatable disorders. She does receive and take a number of prescribed medicines, some of which are for mild diabetes and mild hypertension. Claimant is considerably overweight.
 
 
 11
 She has continued to pursue an associates degree in accounting, although she has had to reduce her course schedule and sometimes cannot sit through the whole class. For the last class she completed, she received a grade of 'B.' She relates her school problems primarily to back pain.[4]
 
 
 12
 At the hearing, she primarily described her nervous condition and emotional problems as feelings of depression growing out of pain and inability to do the things she used to do. She claimed to have overdosed on her various medicines in what she described as something of a cross between a suicide attempt and simply not caring. She testified to periodically considering suicide.
 
 The Medical Evidence:
 
 13
 Although claimant has seen several doctors for her back and shoulder problems, no review of that evidence is necessary since she does not challenge the ALJ's findings relative to her physical problems on appeal. For her emotional problems, she has seen at least four doctors, including at least one to whom she was sent by her attorney.
 
 
 14
 All of the doctors agree that claimant suffers from depression and has suicidal ideation. Essentially, they all also agree that her intellectual functioning is intact, that she is oriented, she has a fair ability to care for her needs, a moderate impairment in relating to others, normal speech and normal abstract reasoning, and a moderate impairment with respect to concentration and attention. She has responded favorably to therapy, but chooses not to pursue this method for treatment. At least one doctor has strongly recommended that a period of hospitalization would be helpful, but claimant refuses to go to the hospital. None of the psychiatric evaluations include any reports of clinical testing. In short, the picture is of a troubled person, but one who continues to function on a day-to-day basis, including pursuing college level accounting courses and providing day care for her granddaughter. In reviewing this evidence, the ALJ fairly concluded:
 
 
 15
 In addition to the physical impairments, the claimant has been depressed and has expressed suicidal ideas. She had a suicidal idea in 1979 but returned to work after this. She expressed another suicidal idea in February, 1982 but was treated and was able to continue studying accounting at that time (Exhibit 28). In 1981, she underwent psychotherapy from Dr. Wright and improved. She is able to care for her needs, to relate to other people as shown by her schooling, and to follow instructions and maintain attention (Exhibit 21). She studied accounting and other courses while she was undergoing therapy. In view of this evidence, the record shows that her nervousness and depression did not prevent her from working for 12 months. She improved on therapy in 1981 and stopped the therapy on her own (Exhibit 21). She also refused hospitalization for depression when recommended by Dr. Cataldi in February, 1982. Review of all the evidence shows that her psychiatric impairment did not interfere with the mental abilities required for her to work for 12 months.
 
 
 16
 (App. 18.)
 
 
 17
 The function of an appellate court in judicial review of the Secretary's decision is limited, except for errors of law, to determining whether the Secretary's decision is supported by substantial evidence. Walters v. Gardner, 397 F.2d 89, 90 (6th Cir. 1968). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is the Secretary's responsibility to resolve issues of fact; and while a court might reach a different conclusion on the same evidence, it is without power to do so. Myers v. Richardson, 471 F.2d 1265, 1268 (6th Cir. 1972).
 
 
 18
 When these controlling legal principles are applied to an analysis of the record here, they dictate that the Secretary's decision must be upheld as supported by substantial evidence.
 
 
 
 *
 Honorable Scott Reed, United States District Judge, Eastern District of Kentucky, sitting by designation
 
 
 [1]
 20 C.F.R. Sec. 404.1530 reads in pertinent part:
 (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
 (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.
 
 
 [2]
 On appeal, Gillespie does not challenge the ALJ's findings that her back, leg, and shoulder problems, plus the pain associated therewith, do not prevent her from doing sedentary work
 
 
 [3]
 Claimant also had a 1979 work place shoulder injury but resumed working after this injury. She has received in the past and continues to receive workers' compensation disability payments
 
 
 [4]
 Claimant, upon questioning by her attorney at the hearing, explained her recent school problems as follows:
 Q. Tell me a little bit about that. How many courses did you start off taking?
 A. I started off taking three, and I had to drop two.
 Q. Why?
 A. I was missing too much class and I couldn't keep up.
 Q. Why were you missing too much class?
 A. My back was hurting and I couldn't stand to sit up in class.
 Q. You did complete one course out of the three?
 A. Yes.
 Q. And do you have problems attending that course?
 A. Yes.
 Q. Do you know how many times the course met during the quarter?
 A. 11.
 Q. How many did you attend?
 A. Six.
 Q. You missed five out of the 11?
 A. Yes.
 Q. And was it due to your back all of the time?
 A. Yes.